IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO NOLASCO, | No. 2:23-CV-0652-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| F. RODRIGUEZ, et al., | |
| Defendants. | |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at California Health Care Facility in Stockton, California. See ECF No. 1 at 1. Plaintiff names the following as defendants: (1) F. Rodriguez, Correctional Sergeant; (2) A. Youseff, Medical Executive; (3) Jane or John Doe, Custody Appeals Coordinator at Wasco Prison; (4) Jane or John Doe, Health Care Appeals Coordinator at Wasco Prison; (5) N. Malakka, M.D.; (6) I. Alomari; Chief Deputy Warden; (7) H. Shamoeil, Custody Supervisor; (8) San Luis Obispo County Jail; (9) Shramel, Lieutenant; (10) Jane or John Doe, Primary Care Physician; and (11) Jane or John Doe, RN. Id. at 2-4.

Plaintiff identifies as a transgender female and has been diagnosed with gender dysphoria. Id. at 5. When Plaintiff was arrested, she presented as female. Id. Plaintiff alleges prison officials discriminated against her because of her gender identity, retaliated against her for filing grievances, and subjected her to cruel and unusual punishment. Id. Plaintiff alleges that, because of her status as a transgender person, she was mocked and ridiculed by prison staff in front of other inmates. Id. at 6. Plaintiff was denied a razor, even though every inmate was issued one, so that she could not shave. Id. Defendants did so in retaliation for Plaintiff filing grievances. Id. Plaintiff claims that Defendants' denial of recognition of her status as a transgender person put her in danger. Id. at 6. Plaintiff is Hispanic and because "the Hispanic general population would not welcome a transgender," she was susceptible to attack. Id.

///

///

Upon entering the California Department of Corrections and Rehabilitation (CDCR), Plaintiff claims she was supposed to receive a transgender access card, which acts as an accommodation for transgender prisoners. Id. at 9. Plaintiff never received the card in retaliation for filing grievances against Defendant F. Rodriguez, a correctional sergeant. Id. Plaintiff also alleges Defendants Rodriguez and Youssef, appeals coordinators, and Defendant Alomari, chief warden, intentionally discriminated against and retaliated against Plaintiff. Id. Plaintiff believes Defendants improperly denied grievances. Id. One grievance was denied as a duplicate and one was bounced between health care and custody coordinators. See id. at 10. Defendants Rodriguez and Alomari also marked down on a gender identification questionnaire that Plaintiff did not identify as transgender. Id. at 16.

According to Plaintiff, Defendant Youssef denied Plaintiff's complaint that requested Plaintiff see an endocrinologist for hormones and other necessary medications. Id. Plaintiff believes Youssef has no tolerance for transgender individuals. Id. Eventually Plaintiff was able to see an endocrinologist. Id. at 12. The endocrinologist either did not prescribe the appropriate medications or made a recommendation for the medications and Defendant John or Jane Doe, RN, refused to follow the recommendation. Id. at 13.

Plaintiff next alleges Jane or John Doe, Primary Care Physician, did not follow the recommendations of a specialist. Id. Defendant Malakkla similarly did not follow the recommendations of the specialist, saying "why did they send this mess to us." See id. Plaintiff claims that Defendant Shramel interviewed her about her transgender status, saying "you don't want to be a troublemaker do you?" Id. at 15.

## II. DISCUSSION

Plaintiff presents a cognizable retaliation claim against Defendants Rodriguez, Youssef, and Alomari. Plaintiff's equal protection claim is not currently cognizable because it does not identify the defendants who allegedly committed the violations. Similarly, Plaintiff's claim that she was endangered is not cognizable because it is too conclusory and because she does not identify which defendants allegedly placed her in danger. Plaintiff's medical needs

3

claims do not allege defendants acted for the purpose of inflicting harm, and so they are not cognizable. Plaintiff presents no cognizable claims against Defendants Shramel and Shamoeil, as she does not link them to any of her claims. Defendant San Luis Obispo County Jail cannot be held liable because Plaintiff does not tie any of her claims to the Jail's policies or customs.

Plaintiff will be given leave to amend her claims.

### A. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Plaintiff alleges that, because of her status as a transgender person, she was treated differently from other prisoners. ECF No. 1 at 6. She was mocked and ridiculed by prison staff and was denied a razor even though every inmate is supposed to be issued one. Id. Although Plaintiff pleads a sufficient harm, she does not identify which defendants denied her a razor or mocked and ridiculed her. See id. She only describes the individuals as "jail officials." See id.

Generally, to state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Plaintiff must identify which defendants allegedly inflicted this particular harm to present a cognizable claim. Plaintiff fails to do so here and will be provided an opportunity to amend consistent with the standards outlined above.

### B. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that they were retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily

silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11.  By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action which is more than minimal satisfies this element.  Thus, if this reading of Rhodes is correct, the chilling effect element is essentially subsumed by adverse action.

Plaintiff claims that Defendants Rodriguez, Youssef, and Alomari improperly dealt with Plaintiff's filed grievances in retaliation for her filing grievances and because she identifies as transgender.  ECF No. 1 at 9-10.  One grievance was treated as a duplicate and one bounced between health care and custody coordinators.  See id. at 10.  Defendants Rodriguez and Alomari also marked down on a gender identification questionnaire that Plaintiff did not identify as transgender.  Id. at 16.  Plaintiff presents a cognizable retaliation claim against Defendants Rodriguez, Youssef, and Alomari because she states which specific defendants took adverse action against her by improperly dealing with her appeals and interfering with her accommodations because of her protected conduct.

Plaintiff also alleges that, because she filed a grievance against Defendant F. Rodriguez, she did not receive a transgender access card. ECF No. 1 at 9. While Plaintiff presents facts supporting a retaliation claim, she again does not identify which defendant caused her harm by not providing her with a card. See id. As explained above, she must do so to present a cognizable claim. Plaintiff will be provided an opportunity to amend this portion of her retaliation claim.

### C. Eighth Amendment Claims

Plaintiff raises two categories of claims arising under the Eighth Amendment. First Plaintiff alleges that Defendants' conduct put her safety at risk. Second, Plaintiff alleges inadequate treatment of her medical needs.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

///
///
///
///

### 1. Safety

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Plaintiff alleges she was not given accommodations for her transgender status and was placed in housing with males. ECF No. 1 at 6. According to Plaintiff, this made her susceptible to attack. Id. As explained above, to present a cognizable claim, Plaintiff must show that (1) objectively she was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. A conclusory statement that Plaintiff was susceptible to attack is insufficient. Further, as also explained above, Plaintiff must identify which defendants knew of and disregarded the substantial risk of serious harm.

### 2. Medical Needs

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is

sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges Defendant Youseff was deliberately indifferent when denying Plaintiff's request to see an endocrinologist. ECF No. 1 at 11. Plaintiff needed hormones and other medications for treatment of her gender dysphoria. Id. To present a cognizable claim, Plaintiff must allege that (1) objectively, Defendant Youseff's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, Youseff must have acted unnecessarily and wantonly for the purpose of inflicting

harm. See Farmer, 511 U.S. at 834. Plaintiff does not do so, and thus she does not present a cognizable claim.

Plaintiff was eventually able to see an endocrinologist. ECF No. 1 at 12. Plaintiff is not sure whether the endocrinologist prescribed medications; if so, then Defendant Jane or John Doe, RN, delayed giving the medication to Defendant Jane or John Doe, primary care physician. Id. at 13. Defendant Malakkla delayed Plaintiff from seeing a specialist and refused to prescribe medication recommended by the specialist. Id.

Plaintiff does not allege that the defendants' conduct resulted in the denial of the minimal civilized measure of life's necessities or that they acted unnecessarily and wantonly for the purpose of inflicting harm. See id. She must do so to present a cognizable claim. See Farmer, 511 U.S. at 834.

### D. Defendants Shramel and Shamoeil

Each defendant must be specifically linked to a claim, and each claim must specifically name which defendants are linked to it. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). Defendant Shramel is alleged to have interviewed Plaintiff about being transgender and allegedly gave her a hard time about not fitting in. ECF No. 1 at 15. Plaintiff does not, however, connect Shramel with any claim. See id. Defendant H. Shamoeil is not discussed at all in the body of the complaint. See id. Plaintiff will be provided an opportunity to amend to explain how these defendants participated in a violation of Plaintiff's rights.

### E. Municipal Liability

Municipalities and other local government units are among those "persons" to whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Counties and municipal government officials are also "persons" for purposes of § 1983. See id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). A local government unit, however, may not be held responsible for the acts of its employees or officials under a respondeat superior theory of liability. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of the actions of its employees or officers. See id. To assert municipal liability, therefore, the

plaintiff must allege that the constitutional deprivation complained of resulted from a policy or custom of the municipality. See id.

Plaintiff lists San Luis Obispo County Jail as a defendant. ECF No. 1 at 4. San Luis Obispo County Jail can only be liable for acts or omissions resulting from official policies or customs. See Bd. of County Comm'rs v. Brown, 520 U.S. at 403. Plaintiff does not make the necessary allegations. See ECF No. 1. Plaintiff currently presents no cognizable claims against San Luis Obispo County Jail, but will be provided leave to amend.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: August 16, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE